CUMMINGS MANUFACTURING COMPANY

*vs.*

CLYDE H. SMITH, et als.

Somerset.    Opinion May 1, 1915.

*Assumpsit.    Corporation.    Credit.    Directors.    Equity of Redemption.*
*Exceptions.    Foreclosure.    Implied Contract.    Misrepresentation.*
*Mortgage.    Obtaining Credit.    Partnership.*

1.   The case shows that the plaintiff believed it was giving credit to a going con-
cern, possessed of apparent assets and good will of the business, and acted upon
this understanding.    It follows as a matter of law, under these circumstances
that the plaintiff cannot be held to have given credit to the F. J. Smith Company,
although its account is charged to that company.

2.   The defendants cannot avail themselves of the theory that the form of book-
keeping controls the merits of this transaction.

3.   Withholding information when good faith and honest dealing require it to be
given, is as culpable as misrepresentation when good faith and honest dealing
require the truth to be spoken.

4.   It is not necessary that the other party should have created the false impres-
sion or intended it; it is sufficient that he knows it and takes advantage of it.

5.   The question is, who are the real parties in interest; who obtained credit of
the plaintiff, and who had the benefit of that credit?

6.   Upon the principle of implied contract, those who had the benefit of the credit
obtained should be held responsible.

On exceptions by the defendants.    Exceptions overruled.

An action of assumpsit on an account annexed, in which the plain-
tiff seeks to charge the defendants, as copartners.    A denial of
partnership was seasonably filed.    The defendants excepted to the
introduction of plaintiff's account as it appeared upon the book of
the F. J. Smith Company.    At the conclusion of the evidence, the
defendants moved that a verdict be directed for defendants, which

motion the presiding Justice overruled.   The court then instructed the jury to return a verdict for the plaintiff, to which rulings and instructions the defendant excepted.   Plea, general issue.

The case is stated in the opinion.

*Fred F. Lawrence, and Samuel .W. Gould,* for plaintiff.

*George W. Gower,* for defendant Greene.

*Merrill & Merrill,* for defendant Smith.

*Walton & Walton,* for defendant Hill.

SITTING: SAVAGE, C. J., SPEAR, KING, HANSON, JJ.

SPEAR, J.   This was an action of assumpsit on account annexed in which the defendants are sought to be charged as copartners. The general issue was pleaded.   A denial of copartnership was seasonably filed.   It was in evidence and not controverted that for many years prior to 1910, F. J. Smith Company, a Maine corporation, was located at Portland and doing a publication and mail order business, and that during that time it had had dealings with the plaintiff.   The F. J. Smith Company on February 17, 1911, gave a mortgage of all its assets, good will and choses in action which came into the hands of the defendants, and was by them foreclosed August 9, 1911, a record of which was made August 29, 1911, the equity of redemption of which expired October 28, 1911.

From the expiration of the redemption of the mortgage, October 28, 1911, to the date of the organization of the Smith Publishing Company, the new corporation, December 26, 1911, the defendants were the absolute owners of every conceivable item of property of which the F. J. Smith Company had been possessed.   During this time they proceeded to do business in the name of the F. J. Smith Company, as they had a right to do, and contracted the whole account for which the plaintiff brings this suit, except one item.   But doing business in its name did not alter the fact that this company was out of business and was dead in law and in fact.   *Van Oss* v. *Petroleum Company,* 113 Maine.   So far as financial responsibility was concerned, they might just as well have done business in the name of the F. J. Jones Company.   But it is said, although they owned the property, they did not take possession of it, but continued the business in the name, and obtained credit on the responsibility, of the cor-

poration; and that the plaintiff having given credit upon this theory, should now be confined for redress to the corporation to which he gave credit. This might be true if the plaintiff had known or had been informed of the true condition of the corporation. But had it known that this company had been stripped of every vestige of property, and was utterly worthless, it may be fairly assumed that it would not have given any credit whatever.

The case shows that the plaintiff believed it was giving credit to a going concern, possessed of the apparent assets and good will of the business, and acted upon this understanding. It follows that the plaintiff cannot, as a matter of law, under those circumstances, be held to have given credit to the F. J. Smith Company, although its account is charged to that company. Accordingly, the defendants cannot avail themselves of the theory that the form of bookkeeping controls the merits of this transaction. The question is, who are the real parties in interest? Who obtained credit of the plaintiff? Who had the benefit of that credit? Upon the principle of implied contract those who had the benefit should be held responsible. There can be no question as to whose benefit the credit of the plaintiff inured, as appears from the following transactions.

After October 28, 1911, and during all the time this bill was being contracted, the defendants, as before stated, were the absolute owners of every vestige of property of which the F. J. Smith Company had been possessed. This corporation, by its mortgage and foreclosure, was left absolutely penniless, without one dollar in property or capital, and was utterly stripped of every attribute of corporate existence, except the right to dissolve. Under the circumstances, after having obtained credit on the strength, as they say, of the corporation and its assets, they formed a new corporation named the Smith Publishing Company, S. C. H. and G., directors of this new corporation, purchased of S. C. H. and G., directors in, and sole owners of, the assets of the F. J. Smith Company, under the foreclosed mortgage, not only all the assets included in the mortgage but also the increment to the property after the foreclosure, the very gain of which may be due in part to the credit they now seek to avoid. The motion and vote to purchase show the following, to wit: "On motion, voted to purchase of Greene, all of the personal property which said Greene acquired by virtue of the foreclosure of a chattel

mortgage held by them against the F. J. Smith Publishing Company; also to purchase all additions made to said property, of every name, nature and description, by said S., C., H., and G. or either of them, since the commencement of the foreclosure of said mortgage, together with the good will of the business." In other words, S., C., H. and G. sold to the Smith Publishing Company, but really to themselves, property and good will, taken under foreclosure, of the F. J. Smith Company, which they valued at $60,000, and contended, although actually doing business for themselves, and getting credit on the strength of these assets, that they were not responsible for the credit received, because they had not taken manual possession of the property; yet, when they chose to sell they assumed an unqualified right to possession—although the same right had existed every moment while getting credit—and took it, and did sell every item that had belonged to the F. J. Smith Company, and the profits, if any, besides.

Whatever the subjective reasons for this action, the objective reasons demand that the defendants shall be regarded as in possession of all the assets of this defunct corporation from the beginning of the foreclosure, and held responsible for the business done during such possession. Good faith forbids that they should be allowed to deny possession, while the property was used as a muniment of credit, and be permitted to take possession, to relieve both the property and themselves from the credit so obtained, when there was no change in their relation to the property. While we make no intimation of the kind, yet this sort of practice would throw the door wide open to fraud and cannot be permitted to receive the approval of judicial sanction. Nor do we believe the defendants, with a full understanding of the situation, would wish to avail themselves of so unjust an attitude.

But it is said there are no equities in favor of the plaintiff; that it knew the corporation with which it was dealing was not sound financially. Grant this. But it did not know that the directors of the corporation had stripped it of every vestige of financial responsibility. It was a going concern with a subscription list of 250,000 valued by one of the directors at twenty-five cents per name. Had the directors, and later owners, left this property in the corporation, the plaintiff may have had no ground for complaint. But for these defendants, themselves, officers of the corporation, knowing all the facts, to allow the plaintiff to give credit, in ignorance of the facts, can be

regarded as nothing less than withholding information which it was their duty to disclose, if they would bring themselves within the requirements of the law.    Withholding information when good faith and honest dealing require it to be given, is as culpable as misrepresentation when good faith and honest dealing require the truth to be spoken.    Withholding material information when it ought to be given has been regarded as evidence of fraud from time immemorial. In *Lapish* v. *Wells*, 6 Maine, 175, in 1829, this question was elaborately discussed in which it is held:   "The fraud, said counsel, consists, in such cases, in dealing with the party in ignorance, and leaving him so. It is not necessary that the other party should have created the false impression or intended it; it is sufficient that he knows it, and takes advantage of it."    In the case at bar the defendants did create the false situation by taking all the property of the corporation, and selling it to themselves.

Relating to the same question, it is again said:   "The laws of morality can never give sanction to such a proceeding; and it surely cannot be the duty of a court of justice to be more indulgent in its judgment.    It would be a reproach to our laws and tribunals which administer them, to permit fraud to accomplish its designs, when those designs are detected and disclosed."

Again, disclaiming even an intimation of actual fraud on the part of the defendants, the situation here disclosed must be regarded as sufficient in law to hold them responsible, in some capacity, for the credit given in the plaintiff's account.

The remaining question is:   In what capacity was the credit obtained by the defendants, as partners or tenants in common?   The broadest definition of partnership should be invoked to cover the relation of the defendants to the plaintiff in this case.   At least technicality of definition should not be allowed to defeat the plaintiff's suit.   It should be observed that a partnership is not what the associated parties say it is; nor what they think it is; nor does it depend upon any particular agreement; but is an inference of law from existing facts.   *Dwinel* v. *Stone*, 30 Maine, 384, and many subsequent cases.   Therefore what the defendants intended or thought does not necessarily control.   The question is whether the plaintiff when it discovered the true state of affairs was authorized to regard the relation of the defendants to the credit it had given as that of a partnership in this particular case.   The case at bar falls fairly with-

in the facts found in *Bearce* v. *Washburn, et al.*, 43 Maine, 564, which the report shows to be as follows: ''It appears that this action was brought against the defendants as copartners in a lumbering operation, and that the goods sued for were used in that operation for the benefit of both defendants, who shared equally the profits, one having furnished the funds and the other performed the necessary labor.'' The court say: ''The facts reported in this case, so far as the lumbering operation, in which they were engaged, is concerned, bring the defendants clearly within the definition of co-partners, both between themselves and in their relations with others. The evidence also shows that the goods sued for went to the use of the partnership, and were purchased with the knowledge and assent of both of the defendants. The papers referred to in the report have not come into the hands of the court.'' There was a community of interest among the defendants. They had the benefit of the credit. They, not the corporation, had the benefit of the profits, if any. They sold them to themselves, by the vote of purchase. The inference of law is in this particular transaction that they were partners in obtaining the credit which they received from the plaintiff. At the close of the testimony the presiding Justice ordered a verdict for the plaintiff, to which exceptions were taken.

*Exceptions overruled.*