JULIE E. JENSEN, EXECUTRIX *vs*. WESLEY M. SNOW.

Cumberland.        Opinion January 9, 1933.

416

*Coombs & Gould,*
*Clarence W. Peabody,* for complainant.
*Albert E. Neal,*
*Laughlin & Gurney,* for respondents.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, JJ.
MORRILL, A.R.J.

STURGIS, J. Bill in Equity for the cancellation of an assignment of a note and mortgage and of a deed, with prayers for recovery of the moneys paid and for incidental and general relief. After amendment, the defendant's demurrers were sustained and the bill dismissed. The case comes forward on appeal.

In her capacity as executrix of the last will and testament of Rasmus Jensen, her husband, now deceased, the plaintiff avers, in substance, that from sometime in 1911 until June 30, 1930, when Mr. Jensen died, the defendant acted as his confidential adviser

and agent. All the decedent's surplus earnings were entrusted to and invested by the defendant, and the notes, mortgages and other securities taken were retained by him. Except for a short period immediately preceding Mr. Jensen's death, he relied solely on the defendant for advice as to all his investments, retained full confidence in him and neither sought nor accepted advice from other sources. As a preface to the foregoing, it is set out that Mr. Jensen was a man of humble calling with practically no knowledge of business matters. This averment sets out with requisite certainty that a confidential relation existed between the plaintiff's testator and the defendant.

The plaintiff continues her pleadings with the complaint that on January 28, 1922, the defendant acquired, through foreclosure, the equity of redemption in twenty-three lots of land with the buildings thereon situated at the corner of Ravina Street and Taft Avenue and in a common and undivided one-half interest in two hundred and one lots of land in Carter Place, so called, all in the city of Portland and subject to a first mortgage of $2,500 to one Arthur E. Moore as security for a note of even date and like amount. Two months later, on March 28, 1922, Blanche R. Snow, the defendant's wife, acquired title to this mortgage and note and on September 20, 1922, following, released from it the one-half interest in the two hundred and one lots in Carter Place. And the plaintiff avers that thereafter on November 1, 1922, the defendant, knowing that the maker of this mortgage was in default and that, after the release of the lots in Carter Place, the security of the mortgage did not exceed one-half the debt, induced the decedent, Rasmus Jensen, to purchase said note and mortgage and pay therefor $2,500, then also well knowing that the purchaser believed that the mortgage note was safely and fully secured. And it is set forth that the decedent, through his reliance upon the advice of and his confidence in the defendant, remained in ignorance of the inadequacy and practical worthlessness of the security of this investment until his death.

A summary of the FIFTH PARAGRAPH as amended is that on April 2, 1926, the defendant, having in his possession for investment sundry moneys, notes and mortgages belonging to the plaintiff's husband and all of a value of approximately $7,500, induced

him to accept therefor a parcel of land with the buildings thereon owned by the defendant and situated in South Portland, the defendant well knowing that the buildings were without modern improvements and in a low state of repair and the entire property worth not more than $2,500. The plaintiff avers that, as a part of this trade, her husband was induced to give and did give the defendant a lease of the premises for five years at a rental of $450 per annum but with no right of entry by the lessor, and an option of repurchasing the property during the term for $7,500. And she further avers that the defendant well knew that her decedent, misunderstanding and failing to comprehend the nature and effect of the transaction, believed that the property which had been conveyed to him was fairly worth the consideration which he paid for it, and that the defendant was legally bound by his option to repurchase it within five years. It is also pleaded that, all papers relating to this trade having been drawn by the defendant, he retained them together with the property in his exclusive possession and kept his principal in ignorance of the true nature and effect of the transaction until just prior to the latter's decease.

No principle of law is better settled than that which requires the agent in all dealings concerning matter of his agency to act with utmost faith and loyalty and disclose all facts within his knowledge which bear materially upon his principal's interests. The rule that withholding information, when good faith and honest dealing require that it shall be given, is as culpable as misrepresentation as to facts concerning which good faith and honest dealing require the truth to be spoken is fully applicable to the relation of principal and agent. As has been said, it is fraud to deal with a party in ignorance and leave him so. It is not necessary that the party sought to be charged should have created the false impression nor intended it. It is sufficient that he knows it and takes advantage of it. *Manufacturing Co.* v. *Smith,* 113 Me., 347, 351, 93 A., 968; *Barrett* v. *St. Ry. Co.,* 110 Me., 24, 29, 85 A., 306; *Prentiss* v. *Russ,* 16 Me., 30; *Lapish* v. *Wells,* 6 Me., 175.

We think the plaintiff has well pleaded a fraudulent concealment by the defendant in each of the transactions here attacked. A mistake as to facts based on such a fraud is undoubtedly ground for rescission and cancellation. So too, a mistake as to the legal

effect of a transaction is sufficient for that purpose if a confidential relation exists and the mistake occurs under such circumstances that fraud, imposition or undue influence can be inferred. *Stover* v. *Poole*, 67 Me., 217 ; *Busiere* v. *Reilly*, 189 Mass., 518, 75 N. E., 958. Here, in addition to the inferences fairly to be drawn from the facts averred, there are presumptions of fraud. The confidential relation between the defendant and his principal was such that the law will not assume that the transactions were fair and there was no abuse of confidence. The presumption is of invalidity, which can only be overcome by clear evidence of good faith on the part of the agent and full knowledge and independent consent and action by the principal. *Burnham* v. *Heselton*, 82 Me., 495, 20 A., 80.

The defendant assigns for special causes of demurrer that the bill shows that the plaintiff's husband was guilty of laches in not commencing and prosecuting actions in his lifetime to avoid his transactions here attacked. And against the demand for the cancellation of the assignment of the Samuel B. Lowell note and mortgage, he raises the bar of the Statute of Limitations.

As already noted, it appears on the face of the plaintiff's pleadings that the fraudulent acts and omissions with which she charges the defendant in connection with the Lowell note and mortgage occurred nearly eight years before her husband's death and that he lived four years at least after his trade for the defendant's South Portland property was consummated. Unexplained, these delays might be open to the charge of laches. But a person cannot be deprived of his remedy in equity on the ground of laches unless it appears that he has actual or imputed knowledge of his rights.

Here, it is averred that the plaintiff's husband either had no knowledge of the frauds charged, or none until just prior to his death, when ill health prevented the commencement of an action for rescission, and his ignorance is attributed to a continuing confidence in the fidelity of his agent, induced by the latter's concealments. "One who, by his own fraud, has led another to his injury can not complain of the want of promptness of the plaintiff in discovering the fraud and proceeding to rescind, since it was the defendant's concealment in violation of his duty to him and his interests which prevented the plaintiff from knowing the actual conditions at the time of the transaction. Equity rewards the diligent,

but this has no application to the diligent in concealment and deceit." 1 Story's Eq. Jur., Sec. 86; *Mabry* v. *Randolph*, 7 Cal. App., 421, 427. Where there is a relation of trust and confidence between the parties, in the absence of actual knowledge, the law will not impute constructive knowledge and permit the perpetrator of a fraud to stand upon the defense of delay which is induced by lulling his victims into a sense of security while his confidence is being betrayed. *Kelley* v. *Boettcher*, 85 Fed., 55; *Krohn* v. *Williamson*, 62 Fed., 869; *Kilbourn* v. *Sunderland*, 130 U. S., 505, 9 S. Ct., 594, 32 L. Ed., 1005; *Arkins* v. *Arkins*, 20 Col. App., 123, 77 P., 256; *Phalen* v. *Clark*, 19 Conn., 420; *Driver* v. *Brunemer*, 40 D. C. App., 105; 5 Pomeroy's Eq. Jur., 27; 21 C. J., 249. The failure of Rasmus Jensen in his lifetime to seek avoidance of his transaction with the defendant can not, under the circumstances set forth here, be deemed laches which bar this action. The causes and excuses for his delay, apparent on the face of the pleading, are sufficient as against demurrer. *Shattuck* v. *Jenkins*, 130 Me., 480, 157 A., 543.

R. S., Chap. 95, Sec. 103, is the statute of limitations invoked. Its provision is that "if a fraud is committed which entitles any person to an action, the action may be commenced at any time within six years after the person entitled thereto discovers that he has a just cause of action. The statutory period has not run since the frauds here averred were discovered.

The bill, on its face, seems to be defective as to parties. Inasmuch as Rasmus Jensen died testate, it may be assumed that there are devisees under his will. If not and there was intestacy, title to real property standing in his name passed by the laws of descent. The executrix bringing this action has no title, by virtue of her office, in such property and, if she finally prevails, it does not appear that she can alone do equity. If the defendant should be ordered to return the considerations which he received for his South Portland property from the plaintiff's testator, he would be equitably entitled to a reconveyance of the property. Presumably, that could come only from the holders of the legal title. They seem to be indispensable parties. *Busiere* v. *Reilly*, supra; *Parker* v. *Simpson*, 180 Mass., 334, 341, 62 N. E., 401; *Strout* v. *Lord*, 103 Me., 410, 69 A., 694. This objection as to nonjoinder of the parties is apparent on the face of the pleadings. It is open but not argued under the

general demurrer. It may be raised by the court *sua sponte.*
*Laughton* v. *Harden*, 68 Me., 208; *Strout* v. *Lord*, supra. Until all
necessary parties are joined, no full and final decree can be entered.

Irrespective of whether the injured party has an adequate remedy at law or for want of equitable remedy will suffer an irreparable loss, fraud is one of the fundamental grounds of equitable jurisdiction. *Trask* v. *Close*, 107 Me., 137, 77 A., 698; *Masters* v. *Van Wart*, 125 Me., 402, 134 A., 539. We are convinced that the plaintiff has stated a case cognizable and remediable by a court of equity.

> *Appeal sustained.*
> *Case remanded for further proceedings in accordance with this opinion.*