**Robert DESFOSSES**

v.

**Steve A. NOTIS.**

Supreme Judicial Court of Maine.

Feb. 25, 1975.

---

Drummond, Wescott & Woodsum by Theodore A. Kurtz, Portland, for plaintiff.

Preti & Flaherty by John J. Flaherty, John Paul Erler, Portland, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, ARCHIBALD, and DELAHANTY, JJ.

DELAHANTY, Justice.

The Superior Court (Cumberland County) entered a judgment of $15,377.92 in favor of plaintiff Robert Desfosses in his action for deceit and breach of fiduciary duty against defendant Steve A. Notis. The Superior Court awarded defendant a real estate broker's commission of $1,547.46 based on defendant's role in selling certain real estate to plaintiff. Defendant appeals from the judgment entered against him; plaintiff cross-appeals from the award of a broker's commission to defendant. We deny the appeal and sustain the cross-appeal.

The Superior Court found the following facts, which are amply supported by the record and are not challenged on this appeal. Plaintiff owned and operated a close corporation engaged in selling mobile homes and developing mobile home parks. In May 1969 plaintiff employed defendant, a licensed real estate broker in the State of Maine, to assist generally in the work of the company, with the special assignment of acquiring land for development as mobile home parks. From May through August 1969 defendant received a weekly salary of $125.00 for his work.

During May and June of 1969 plaintiff requested defendant in the course of his employment to negotiate for plaintiff the purchase of a tract of land suitable for the company to develop as a mobile home park. When defendant related that the land in question was available, plaintiff requested defendant to purchase the land as a straw man, in the course of his employment, and then to convey the land to plaintiff.

During the period when defendant was negotiating for the purchase of the land, he repeatedly told plaintiff that the land would cost $32,400.00 although defendant knew the land could be purchased for $15,474.62. Defendant made these false statements for the purpose of inducing plaintiff to deliver to him the sum of $32,400.00. Relying on defendant's false statements as to the cost of the land, plaintiff delivered $32,400.00 to defendant, it being plaintiff's intention to deliver only the money necessary to make the purchase. On June 23, 1969, using plaintiff's money,

defendant paid the owner of the land $14,474.62 to close the sale; defendant took title in his own name and promptly conveyed the land to plaintiff and plaintiff's wife. After paying out the sum necessary to complete the purchase of the land, defendant retained the balance of the $32,400.00 which the plaintiff had given him.

█ It will be noted that the total purchase price paid by defendant for the land was $15,474.62, but that defendant only needed to use $14,474.62 of plaintiff's money to consummate the purchase from the owner. This apparent discrepancy can be explained by recourse to documents appearing in the record before us, which are not included among the findings or conclusions of the Superior Court, but which are substantially undisputed in their terms and effect, and which we may consult to elucidate the matter in hand. See Allstate Insurance Company v. Government Employees Ins. Co., Me., 263 A.2d 78, 81 (1970). From these documents it would appear that in November 1968, prior to his commencing to serve the plaintiff, defendant had entered into a separate agreement, under a bond for a deed, to purchase the land in question from its owner. Pursuant to this agreement defendant had participated in a deposit of $1,000.00. Thus, at the time when defendant was negotiating the purchase of the land for plaintiff, the contemplated purchase was to be achieved by effectuating defendant's own bond for a deed agreement, although defendant did not inform plaintiff of the existence or operation of the bond for a deed. Thus, the $32,400.00 extracted from plaintiff was applied to the sum of $14,474.62 due in order to close the bond for a deed agreement. But the actual and total price which defendant paid for the land was $15,474.62.

Defendant's present appeal virtually concedes his liability on the facts and documents adduced before the Superior Court. Defendant mainly argues that if he sold to his principal property in which he, defendant, had an ownership interest before the commencement of his agency, and if the principal chose to keep the property, the principal cannot compel the agent to refund the difference between the price paid by the principal in excess of the cost of the property to the agent. We think this argument is plainly untenable on the facts of this case. We must look to the legal relations of the parties and the duties they owed each other; then we can properly establish the extent of the remedies the law provides, and whether the conduct of the defendant warranted the relief granted by the Superior Court.

█ Defendant was not entitled to receive a real estate broker's commission for his role in transferring the land in question to plaintiff. Defendant never claimed such a commission as a part of his case; there is no basis in the record for concluding that defendant acted as a real estate broker on behalf of any of the parties concerned. The Superior Court erred in awarding the commission gratuitously. We sustain plaintiff's cross-appeal on this issue.

█ On the facts as found by the Superior Court, we hold the legal relation between plaintiff and defendant to be that of principal and agent. Whether the relationship might be characterized as that of master and servant is immaterial to our present discussion, since the master-servant relationship is also a form of agency. See Restatement (Second) of Agency § 2(1) & (2) (1957). Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act. Id. § 1(1) (1957). Here, the parties agreed that the defendant was to seek out property to advance plaintiff's business purposes, that defendant's endeavors were subject to plaintiff's control and approval, and that defendant consented to act on plaintiff's behalf for the purposes of the agency, and accepted salary and other emoluments in doing so. The Superior Court properly determined that an agency

relationship existed both in fact and in law. Cf. Poretta v. Superior Dowel Co., 153 Me. 308, 313–16, 137 A.2d 361, 365–66 (1957).

■ An agent is a fiduciary with respect to matters within the scope of his agency. Restatement (Second) of Agency § 13 (1957). No principle of law is better settled than that which requires the agent in all his dealings concerning the matter of his agency to act with utmost faith and loyalty and disclose all facts within his knowledge which bear materially upon his principal's interest. Jensen v. Snow, 131 Me. 415, 418, 163 A. 784, 786 (1933); see Devine v. Hudgins, 131 Me. 353, 354, 163 A. 83, 84 (1932). An agent acting for the purchaser of land, whether by appointment or as a volunteer, must see that he meets fairly and squarely the responsibility of his position and does not take any advantage, either for his own gain or to the injury of the person whom he represents. Spindler v. Krieger, 16 Ill.App.2d 131, 147 N.E.2d 457, 464 (1958). The agent's fiduciary duties to his principal may be broadly phrased as duties of service and obedience, and duties of loyalty. Here, plaintiff has satisfactorily established numerous breaches by defendant of his fiduciary duties, to wit: failure to fully disclose material facts; misrepresentations of matters within the scope of the agency; false inducements to obtain money from the principal; and misuse and wrongful retention of funds peculated by defendant from his principal. A fiduciary who commits a breach of his duty as fiduciary is guilty of tortious conduct and the beneficiary can obtain redress either at law or in equity for the harm done. Restatement of Restitution § 138, comment (a) (1936).

■ Since the procedural merger of law and equity, there is but one form of action, the "civil action." Me.R.Civ.P. 2. A party makes known in his demand for relief what it is that he wants, and in obtaining it he is not shackled by the formalisms of the common law or the niceties of equity procedure. Field, McKusick & Wroth, Maine Civil Practice § 2.1 (2d ed. 1970). Here, plaintiff claims that he is damaged to the extent that defendant retained moneys given to him in excess of what was required to properly accomplish the agency. Defendant contends that plaintiff is at most entitled to a remedy in the form of recision; that plaintiff may receive back all of the money given to defendant if plaintiff will rescind the bargain and reconvey the land in question to defendant.

■ Even if we concede for the sake of argument that defendant's interest in the bond for a deed arrangement antedated the inception of the agency relation, we do not think plaintiff's remedy must be restricted on that account. Defendant urges that although he did not disclose his antecedent, independent interest in the land, plaintiff is without remedy unless he wants to rescind the sale altogether. The shortcoming of defendant's argument is that it fails to consider an additional aspect of the defendant's wrongful conduct, that defendant used plaintiff's money to complete defendant's own purchase of the property under the bond for a deed. Whatever the nature of defendant's antecedent interest in the property, his acquisition of the property was an indubitable incident of the agency. An agent who, in violation of his duty to his principal, uses for his own purposes or those of a third person assets of the principal's business is subject to liability to the principal for the value of the use. Restatement (Second) of Agency, supra, § 404. If an agent has received a benefit as a result of violating his duty of loyalty, the principal is entitled to recover from him what he has so received, its value, or its proceeds, and also the amount of damage thereby caused. Id. § 407. Here, defendant applied his principal's assets in such a way as to obtain the land for his principal by using only a portion of the assets entrusted to him. On these facts it is unacceptable to suggest that defendant may retain his ill-gotten gains, or else compel plaintiff to reconvey the land in order to recover funds original-

ly entrusted to purchase the very same land. We think the above principles of the Restatement mandate a clear and decisive result. Defendant has misapplied his principal's assets, using them for his own benefit and manifestly violating his fiduciary duty of loyalty and fair dealing. He is liable to his principal for secret profits, in this case moneys wrongfully retained after the purpose of the agency was accomplished. See Cushing v. Danforth, 76 Me. 114, 118 (1884).

In simpler days, this Court has reached similar conclusions. When a principal gave an agent $80.00 to purchase a certain horse and instructed the agent to pay no more than that sum, and less if possible, it was held that the agent was not at liberty to make a profit for himself in the transaction. Thus, when the agent represented to his principal that the purchase had consumed the whole $80.00—though the agent had in fact paid only $72.50—it was further held that the sum remaining in the agent's hands was the money of his principal, which could be recovered in a proper action. Bunker v. Miles, 30 Me. 431, 432–33 (1849). There was no suggestion in *Bunker* that the principal was obliged to return the horse in order to recover the funds given to the agent.[1] Rather the principal was entitled to retain the benefit of the agent's acting within the scope of his agency, while also recovering the excess money which the agent had duplicitously and wrongfully arrogated. See also American Realty Company v. Amey, 121 Me. 545, 548–51, 118 A. 475, 476–77 (1922).

We hold that plaintiff may retain the land and sue the agent to recover his profits, in this case money of the principal wrongfully retained by the agent. Whether plaintiff's remedy is viewed as an accounting of a fiduciary in equity or the recovery of damages at law is not material to our view of the case. On these facts, the exact and unfailing measure of plaintiff's damage is the difference between the sum entrusted to defendant, and the contract purchase price actually paid by defendant to acquire the property in his own name prior to the transfer to plaintiff in accordance with the agency relation. At that point the defendant had acquired the power to perfect his fiduciary obligation, and plaintiff is entitled to the full benefit of his agent's rightful duties.

The fact that defendant may have parted with these funds, or paid some of them over to an erstwhile partner in the bond for a deed arrangement, of course does not erase or reduce defendant's liability. There are no findings and there is no necessity to conclude that defendant made any payments under any contractual agreement to any person dehors the record. Defendant may not avoid a just accounting by inculpating an evanescent co-venturer with whom he may have shared his booty. Defendant owed plaintiff a fiduciary obligation; defendant bought the land in his own name under a contract for $15,474.62; he conveyed the land to his principal, who had given him $32,400.00 to make the purchase. Defendant must now answer for the $16,925.38, together with interest and costs.

The entry shall be:

Appeal denied.

Cross-appeal sustained.

Judgment shall be entered in favor of plaintiff in the amount of $16,925.38, together with interest and costs.

WERNICK, J., did not sit.

All Justices concurring.

---

[1]. It may be of interest to mention that according to the headnotes in the *Bunker* case, the agent had acquired a contractual interest in the horse in his own behalf before he entered into an agency relation with his principal and received his principal's funds. 30 Me. at 431. But the Court does not discuss this facet of the case in its opinion. Neither does our use of *Bunker* in the text purport to apply or rely on the facts stated in the headnotes to the case.