**GOLDBERG REALTY GROUP**

v.

**David WEINSTEIN.**

Supreme Judicial Court of Maine.

Argued Sept. 5, 1995.

Decided Jan. 3, 1996.

Durward W. Parkinson (orally), Bernstein, Shur, Sawyer & Nelson, Kennebunk, for Plaintiff.

Ellyn C. Ballou (orally), South Freeport, Martica S. Douglas, Douglas, Whiting, Denham & Rogers, Portland, for Defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, and DANA, JJ.

WATHEN, Chief Justice.

Defendant David Weinstein appeals from a judgment entered in the Superior Court (York County, *Crowley, J.*) awarding plaintiff Goldberg Realty Group (GRG) a commission pursuant to the terms of a real estate listing contract. Weinstein argues on appeal that the court erred in ruling that GRG's failure to disclose certain facts relating to the sale did not constitute a breach of fiduciary duty. Because we conclude that GRG breached its duty by failing to disclose all facts material to the sale and therefore forfeited any entitlement to a commission, we vacate the judgment.

The facts as presented at trial are complex, but may be summarized as follows: In January of 1987, Weinstein signed an "Exclusive Right to Sell Agreement" with GRG for the marketing and sale of his commercial property in Kennebunkport. The listing agreement provided for a commission of 10% of the sales price if GRG produced a ready, willing, and able purchaser within the one year term of the agreement.[1] In recognition

---

1. The agreement further provided that if a sale was initiated during the one year listing period, but was finalized by a binding contract within the next year ("the protection period"), it would

of the fact that Marc Feldman, a tenant on the property, held a right of first refusal, the agreement provided that the commission would be reduced to 7% of the sales price "[s]hould the property ultimately be sold to a person occupying the property as a tenant."

In November of 1987, GRG produced a prospect, Peter Camplin, who contracted with Weinstein to purchase the property. The sales price was $1.1 million to be paid as follows: a deposit of $35,000 cash or certified check for $965,000 at closing, and a note to the seller for the remaining $100,000, secured by a second mortgage on the property.

After the sales contract was executed, Feldman, the tenant, attempted to exercise his right of first refusal. Weinstein rejected Feldman's tendered deposit and argued that the right had lapsed. Feldman filed suit seeking specific performance of his agreement and filed a notice of *lis pendens* on the property. Pursuant to the sales contract, Camplin demanded that Weinstein "exercise all reasonable diligence to correct the defect so that title will be merchantable on the closing date, or within a reasonable time thereafter...." In an effort to preserve his interest in the property, Camplin intervened as a co-defendant in the action brought by Feldman.

With the *Feldman* suit still pending, in October of 1988 GRG instituted the present action for the commission it claimed to have earned by producing the Camplin sales agreement.

With both cases still pending, discussions occurred between all parties concerning a possible accommodation of their competing interests. The court found that by the fall of 1989, "the figure that Camplin would accept [for an assignment of his contract] came down as the economy deteriorated and Camplin's [financial] circumstances changed." Ultimately, on September 8, 1989, Feldman, Camplin, and GRG met in the absence of Weinstein. GRG induced Camplin to assign his rights to Feldman by agreeing to pay to Camplin one half of its commission, $55,000. Feldman then assigned his rights to a corporation controlled by him and formed for the

be covered by the listing agreement and GRG

purpose of developing the property. Weinstein was informed that Camplin had assigned his rights to Feldman and was instructed that the closing would take place "in accordance with the terms of the [original Camplin contract]." Because of an explicit agreement between Camplin, Feldman, and GRG, Weinstein was not informed of GRG's involvement in the assignment or of GRG's agreement to pay Camplin.

Weinstein tentatively agreed to attend a closing but declined to accept a note from Feldman's corporation for $100,000 of the purchase price unless it was personally guaranteed by Camplin. The closing was never held. The *Feldman* suit then came to trial and the court held that the failure to close was not a result of a breach by Camplin and that he was entitled on his cross-claim against Weinstein to a full refund of his deposit. The court also found that Camplin did finally agree to guarantee the note and that there was no legitimate reason for Weinstein to refuse to close. It was during the *Feldman* trial that Weinstein first learned of GRG's agreement to pay Camplin one-half of its commission.

The present case was tried without a jury and on the basis of *collateral estoppel* the court adopted the findings made in the *Feldman* suit. The court rejected Weinstein's argument that GRG forfeited its entitlement to a commission by virtue of its undisclosed involvement in the Camplin–Feldman assignment. The court reasoned as follows:

The broker owes a fiduciary duty to its principal, the owner. That duty requires of the broker full disclosure of any information material to the sale. It also requires that the broker act in his principal's best interest even when it conflicts with the broker's own interest. But that duty is not unlimited. The broker must act in the principal's interest as that interest is defined by the contract which created the limited agency.

The furtiveness of GRG's conduct as it pertains to the September 12, 1989 agreement demands that its conduct be particularly scrutinized to determine if GRG

would be entitled to its 10% commission.

breached its fiduciary obligation to Weinstein.

Here, the effect of the assignment and Goldberg's facilitation of the assignment by agreeing to reduce GRG's commission was to permit the contract to close according to its original tenor. Although it may have been contrary to Weinstein's wishes at the time, it was in furtherance of his goals as earlier embodied in the contract.

The broker's duty was to produce a ready, willing and able buyer and to promote the sale of the property according to the terms of the contract of sale which the seller accepted. Despite the furtiveness of Goldberg, GRG fulfilled its duty. Therefore it is entitled to recover.

We conclude that the court erred in finding that the information withheld from Weinstein was not material and that GRG did not breach its fiduciary duty.[2]

▇ A real estate broker, as an agent for the seller of real estate, has a fiduciary duty to the seller with respect to matters within the scope of the agency. *See Devine v. Hudgins,* 131 Me. 353, 354, 163 A. 83, 84 (1932); *Desfosses v. Notis,* 333 A.2d 83, 87 (Me.1975) (quoting *Restatement (Second) of Agency,* Section 13 (1957)). As a fiduciary, the agent is obliged to fully disclose to the principal "all facts within his knowledge which bear materially upon his principal's interests." *Jensen v. Snow,* 131 Me. 415, 418, 163 A. 784 (1933). *Accord, Desfosses,* 333 A.2d at 87. We have previously held that the broker forfeits any right to a commission if he breaches this duty. *Devine,* 131 Me. 353, 163 A. 83. In *Devine,* a land owner employed a broker to assist in an exchange of property and cash. The broker entered into a secret agreement with the other party's broker to pool and then split evenly their commissions. We held that the failure to disclose this pooling agreement was a breach of the broker's fiduciary duty and barred the broker from claiming any commission. *Id.* at 353, 163 A. 83.

Similar applications of the rule have been made in other jurisdictions. *See, e.g., Owen v. Shelton,* 221 Va. 1051, 277 S.E.2d 189, 191 (1981) quoting *Veasey v. Carson,* 177 Mass. 117, 120, 58 N.E. 177, 177 (1900) (broker's failure to disclose purchaser's reservation at closing of right to contest the seller's demand for accrued interest requires forfeiture of commission); *Mason v. Bulleri,* 25 Ariz.App. 357, 543 P.2d 478, 481 (1976) ("[A] broker who breaches his fiduciary duties to his principal is not entitled to recover his commission."); *Sierra Pacific Industries v. Carter,* 104 Cal.App.3d 579, 163 Cal.Rptr. 764 (1980) (failure of broker to reveal familial relationship with purchasers resulted in forfeiture of commission); *Faultersack v. Clintonville Sales Corporation,* 253 Wis. 432, 34 N.W.2d 682 (1948) (failure of auctioneer to disclose loan from auctioneer to land purchaser resulted in forfeit of sales commission).

▇ The rule is premised on the fact that a real estate agent is not hired simply to locate a buyer, but to do so as the seller's fiduciary. Where the fidelity of the agent fails, the agent has not in fact performed under his agreement. There is no requirement that the principal prove fraud or malice on the part of the agent or that the principal show actual harm caused by breach of the agent's duty. In a case alleging nondisclosure, such as the one before us, the only questions are whether the information was material and whether it was withheld by the fiduciary. The rule encourages fiduciaries to avoid temptation altogether by forcing "full and frank disclosure." *Devine,* 131 Me. at 354, 163 A. 83. *See, e.g., Owen,* 277 S.E.2d at 192 ("The price of a violation of the duty to disclose is forfeiture of the broker's right to compensation. This rule illustrates the high regard the law holds for the fiduciary relationship, founded as it is upon one man's trust in the integrity and fidelity of another. The purpose of the rule is more prophylactic than remedial; it is applied, not to compensate the principal for an injury, but rather to discipline the fiduciary in the conduct of the office entrusted to him."); *Batson v. Streh-*

---

**2.** We have no occasion to address the offensive use of *collateral estoppel* by the trial court, nor do we address whether, absent the breach of fiduciary duty, GRG would have been entitled to any or all of its claimed commission.

*low,* 68 Cal.2d 662, 68 Cal.Rptr. 589, 441 P.2d 101, 111 (1968) ("The fact that plaintiff may have received bargained-for consideration for the property, does not relieve defendant of his default or entitle him to retain the commission otherwise improperly paid and accepted. This case is a classic example of the situation which, for public policy reasons, the law seeks to avoid by placing restrictions on one acting in a dual capacity."); *Faultersack,* 34 N.W.2d at 683 ("The doctrine of the cases is that even though there is no fraud on or resulting damage to the principal this rule must be complied with.") (citations omitted).

The court in the present case concluded that the failure to disclose the payment to Camplin was not material to GRG's performance under the listing contract. We disagree. Information is material to the transaction if a person with a degree of business acumen would want that information before proceeding. The principal need not show that, but for the failure to disclose, he would not have reached the decision that he made. The test is whether the information might reasonably be expected to influence the principal's decision. *See Owen,* 277 S.E.2d at 191, quoting *Veasey v. Carson,* 177 Mass. 117, 120, 58 N.E. 177, 177 (1900); *Wheeler v. Rabe,* 198 Colo. 311, 599 P.2d 902, 904 (1979); *Batson,* 441 P.2d at 110 (citations omitted).

The undisclosed. agreement to pay $55,000 from GRG to Camplin was material to the sale of the property. Had Weinstein received $1.1 million cash from Feldman in lieu of $1.1 million cash from Camplin, the undisclosed payment might not have been material to the closing. But here, however, Weinstein had initially agreed to accept a $100,000 note from Camplin, secured by a mortgage on property owned and operated by Camplin. The risk faced by Weinstein in the Camplin contract was the risk that Camplin would default on the $100,000 note and Weinstein would be forced to bear the expense and inconvenience of foreclosing the second mortgage on the property in order to satisfy the debt. The second risk was that the property would be unable to satisfy the debt. The risk of loss faced by Weinstein was determined by several factors, including Camplin's other personal assets and liabilities, and Camplin's ability to manage the property. The individual nature of these risks make the loan provision unassignable, absent some explicit language to the contrary. "A contractual right can be assigned unless the substitution of a right of the assignee for the right of the assignor would materially change the duty of the obligor, or materially increase the burden or risk imposed on him by his contract." *Chadwick–BaRoss v. Martin Marietta Corp.,* 483 A.2d 711, 715 (Me.1984), quoting *Restatement (2d) of Contracts,* § 317(2)(a). *See also, Salmon Lake Seed Co. v. Frontier Trust Co.,* 130 Me. 69, 74, 153 A. 671 (1931) ("An executory contract for personal services, or a contract otherwise involving personal credit, trust, or confidence, cannot be assigned by the sole act of one of the parties thereto."). Thus, a note guaranteed by Camplin, but to be paid by the Feldman corporation, secured by a mortgage on property owned and operated by the Feldman corporation, was not what Weinstein had initially agreed to. Weinstein could have refused to extend credit to the Feldman corporation, even though Camplin had agreed to guarantee the note. The decision whether to accept the new financing arrangement could have been influenced by the information withheld from Weinstein by GRG. The undisclosed payment from GRG to Camplin lowered the personal exposure of Camplin and obscured the facts concerning his deteriorating financial condition.

We conclude that GRG's agreement to pay Camplin one-half of its commission was material to Weinstein's decision concerning the Feldman offer. GRG breached its fiduciary duty by failing to disclose that agreement to its principal and therefore it forfeits any claim to a commission.

The entry shall be:

Judgment vacated. Remanded for entry of judgment in favor of defendant David Weinstein.

All concurring.