*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 16-CF-285

TYRONE WADE, APPELLANT,

V.

UNITED STATES, APPELLEE.

FILED 11/16/2017
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

Appeal from the Superior Court
of the District of Columbia
(CF2-14002-15)

(Hon. Lynn Leibovitz, Trial Judge)

(Submitted September 13, 2017                    Decided November 16, 2017)

*April E. Fearnley* was on the brief for appellant.

*Channing D. Phillips*, United States Attorney at the time the brief was filed, and *Elizabeth Trosman*, *Elizabeth H. Danello*, *Monica Trigoso*, and *Akhi Johnson*, Assistant United States Attorneys, were on the brief for appellee.

Before FISHER, THOMPSON, and MCLEESE, *Associate Judges.*

MCLEESE, *Associate Judge*:  Appellant Tyrone Wade challenges his convictions for unlawful possession of a firearm, possession of an unregistered firearm, and unlawful possession of ammunition.  Mr. Wade argues that the trial court erroneously denied his motions to suppress evidence, that the evidence was

insufficient to support his convictions, and that the trial court erroneously imposed a three-year mandatory minimum sentence.  We affirm.

**I.**

Before trial, Mr. Wade moved to suppress certain tangible evidence as obtained in violation of the Fourth Amendment and certain identification evidence as the result of an unduly suggestive pretrial identification procedure.  The trial court held an evidentiary hearing on the motions.  Viewed in the light most favorable to the trial court's rulings, the evidence at the hearing was as follows.  At approximately 3:30 p.m. on October 8, 2015, an anonymous 911 caller reported a man with a gun in his waist walking in the 1200 block of 7th Street NW.  The caller described the man as a black male wearing a navy blue shirt, a tan hat, and blue jeans, walking with another black male wearing a light green shirt.  When police officers responded, they saw Mr. Wade, who matched the 911 caller's description of the man with the gun, walking with another man who matched the description of the gunman's companion.  The two men were walking about a block away from the location provided by the 911 caller.  The officers pulled their police cruiser alongside the two men, who both began running.  One of the officers, Officer Christopher Brown, chased Mr. Wade.  While running, Mr. Wade

discarded items from his hands, including what appeared to be a cellphone. Mr. Wade continued running, with his right arm bent and his hand near his waist area. During the chase, Officer Brown briefly lost sight of Mr. Wade when Mr. Wade ran around a shed. Officer Brown regained sight of Mr. Wade soon thereafter and eventually apprehended Mr. Wade on the other side of the shed near a fence. Officer Brown handcuffed Mr. Wade and patted Mr. Wade down, but did not feel a gun.

Meanwhile, a civilian eyewitness, Manuel Torres, reported to the police that he had seen a black male with an athletic build run by and toss a gun near a dumpster adjacent to the same shed. Mr. Torres saw the suspect from about five feet away. An officer subsequently recovered a gun lying on the ground in plain view near the dumpster. Because Mr. Torres primarily spoke Spanish, the officers requested an interpreter. The officer who responded to interpret, Officer Kelvin Garcia, eventually escorted Mr. Torres to a show-up identification procedure.

At the show-up, which occurred at 4:29 in the afternoon, Mr. Wade was standing handcuffed between two police cars, with police officers nearby. From about fifteen to twenty feet away, Mr. Torres identified Mr. Wade as the man he had seen running past the shed. After the identification, Mr. Wade was placed

under arrest and searched. Officers found six .357-caliber bullets in Mr. Wade's pocket.

The trial court denied both suppression motions, and the case proceeded to trial. The evidence at trial was largely consistent with the evidence at the suppression hearing, with the following differences and additions. Mr. Torres testified that he saw two people run by the shed area. Mr. Wade was the second person who ran by, and one of Mr. Wade's hands was high on his waist. Mr. Torres did not see Mr. Wade actually throw the gun. Rather, he saw Mr. Wade run behind the dumpster and "at the same time" saw a gun in the air coming from behind the dumpster. After the gun landed, Mr. Torres did not see anyone else near the shed. Officer Garcia, who escorted Mr. Torres to the show-up procedure, had lived in the area of the incident and recognized Mr. Torres as a maintenance man in the area. The gun recovered by the dumpster was a .357-caliber revolver loaded with six rounds of ammunition. The parties stipulated that Mr. Wade had previously been convicted of a crime punishable by imprisonment for a term exceeding one year and did not possess a gun-registration certificate to lawfully possess a firearm.

## II.

We first address Mr. Wade's challenges to the trial court's denial of the motion to suppress evidence on Fourth Amendment grounds. In reviewing a ruling on a motion to suppress, we take the facts and all reasonable inferences in favor of the trial court's ruling. *Peay v. United States*, 597 A.2d 1318, 1320 (D.C. 1991) (en banc). We review de novo whether officers had reasonable articulable suspicion or probable cause. *Prince v. United States*, 825 A.2d 928, 931 (D.C. 2003).

## A.

Mr. Wade argues that the officers lacked reasonable articulable suspicion to support the initial stop. We conclude to the contrary.

Officers may conduct an investigatory stop if they "have a reasonable suspicion based on specific and articulable facts that criminal activity may be occurring." *Pinkney v. United States*, 851 A.2d 479, 493 (D.C. 2004) (internal quotation marks omitted). "[R]easonable suspicion is a less demanding standard than probable cause and requires a showing considerably less than preponderance

of the evidence . . . ." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (internal quotation marks omitted); *see also, e.g.*, *Immigration & Naturalization Serv. v. Delgado*, 466 U.S. 210, 217 (1984) (investigative detention requires "some minimal level of objective justification"); *Robinson v. United States*, 76 A.3d 329, 336 (D.C. 2013) ("The reasonable, articulable suspicion standard requires substantially less than probable cause and considerably less than proof of wrongdoing by a preponderance of the evidence. It is not onerous, but it is not toothless either . . . . Unparticularized suspicion and inarticulate hunches are not sufficient . . . .") (citations and internal quotation marks omitted). Courts consider a number of factors in determining whether officers had reasonable articulable suspicion to stop a suspect, including a report of criminal activity, furtive hand movements, and flight. *See, e.g.*, *Anderson v. United States*, 658 A.2d 1036, 1038 (D.C. 1995).

In the present case, the anonymous 911 caller indicated that he had seen a man with a gun in his waist and provided specific descriptions of that man and the man's companion. Officers who responded found Mr. Wade and a companion about a block away, and both men matched the descriptions provided by the 911 caller. When the officers approached the men, both fled, and Mr. Wade discarded a cellphone and placed his hand near his waist, just where the 911 caller said a gun

would be. Taken together, these circumstances provided the officers with reasonable articulable suspicion to seize Mr. Wade. *Cf., e.g.*, *Jackson v. United States*, 109 A.3d 1105, 1106-09 (D.C. 2015) (holding that stop of appellant was supported by reasonable articulable suspicion, where anonymous 911 caller said that she had seen suspect pull gun out of his pocket, 911 caller described suspect and suspect's location, responding officer located appellant near stated location, appellant matched description, and no one else in vicinity matched description); *Brown v. United States*, 97 A.3d 92, 96 (D.C. 2014) (holding that stop of suspect was supported by reasonable articulable suspicion, where anonymous 911 caller described man with a gun, officers saw suspect walking with man who matched description provided by 911 caller, suspect made nervous and evasive motions, incident occurred in high-crime area, and suspect attempted to flee).

**B.**

Mr. Wade also argues that even if the initial seizure was lawful, the officers exceeded the scope of a lawful investigative detention by detaining him for an unreasonably long time -- somewhere from forty-nine to fifty-three minutes -- before conducting the show-up identification. Mr. Wade also argues that the police may have unlawfully searched him before the show-up identification, the

first point at which Mr. Wade believes the officers had probable cause. We see no basis for reversal.

The United States argues that even if the detention of Mr. Wade before the show-up identification was unreasonably long, the detention was lawful because officers had probable cause to arrest Mr. Wade once the officers recovered the gun. Mr. Wade responds solely by contending that the recovery of the gun did not provide the police with probable cause. We agree with the United States that there was probable cause by the time the police recovered the gun.

"The substance of all the definitions of probable cause is a reasonable ground for belief of guilt." *Perkins v. United States*, 936 A.2d 303, 305-06 (D.C. 2007) (internal quotation marks omitted). Although an officer must have more than "mere suspicion" that criminal activity has taken place, "only the probability, and not a prima facie showing, of criminal activity" is required to establish probable cause. *Id.* at 306.

Before turning to the merits of the probable-cause issue, we address a procedural wrinkle. Ordinarily, we review a trial court ruling based on the evidence that was before the trial court at the time the trial court ruled. *See, e.g.*,

*Thompson v. Shoe World, Inc.*, 569 A.2d 187, 190 (D.C. 1990) (rejecting argument that court should review trial court's ruling based on "evidence that was not before the trial court at the time it ruled"). It is permissible, however, for this court to rely on undisputed trial evidence to affirm the trial court's ruling on a suppression motion. *E.g.*, *West v. United States*, 604 A.2d 422, 427 (D.C. 1992). We have recently flagged the question whether it is also permissible for this court to rely on such evidence to reverse the trial court's ruling, where the losing party failed to renew the motion to suppress based on the new evidence at trial. *Long v. United States*, 156 A.3d 698, 706 n.1 (D.C. 2017) (citing *United States v. Hicks*, 298 U.S. App. D.C. 225, 227, 978 F.2d 722, 724 (1993) ("The problem for Hicks is that he did not again move to suppress when this evidence came to light at trial. An appellate court should not rely on evidence first produced at trial to reverse a pre-trial denial of a suppression motion not renewed at trial.")). Mr. Wade's argument in this court with respect to the suppression motion relies in part on trial evidence. As in *Long*, we need not decide whether such trial evidence may properly be considered, because consideration of the trial evidence does not alter our conclusion that probable cause existed.

We have already described the circumstances that established reasonable articulable suspicion: an anonymous 911 caller describing a man with a gun in his

waist; corroboration of that call in a number of respects, including the location and descriptions of the suspect and his companion; Mr. Wade's discarding of items, including what appeared to be a cellphone; Mr. Wade's flight as well as the flight of Mr. Wade's companion; and Mr. Wade's suspicious conduct in running with his hand near his waist. The evidence at the suppression hearing also indicated that Mr. Torres told the police that he saw the fleeing man toss the gun, and the police promptly located that gun. For purposes of determining whether the officers had probable cause, the pertinent issue is what Mr. Torres said to the officers at the time, not what Mr. Torres later testified to at trial. *See generally, e.g.*, *Bradshaw v. District of Columbia*, 43 A.3d 318, 325 (D.C. 2012) (existence of probable cause to arrest is determined based on "information at the moment of arrest"). In any event, even if Mr. Torres did not actually see the gun in the fleeing man's hands, Mr. Torres did see the man run behind a dumpster and a gun being tossed from behind the dumpster at the same time. Given their close temporal and physical proximity, these circumstances provided probable cause to believe that Mr. Wade had unlawfully possessed the gun, and that was true even before Mr. Torres confirmed that Mr. Wade was the person who had (inferentially) thrown the gun. *Cf., e.g.*, *United States v. Franklin*, 545 Fed. Appx. 243, 246-47 (4th Cir. 2013) (holding that police had probable cause to arrest defendant before defendant was identified by victims, where victims informed police that two cars had been taken

at gunpoint and one of perpetrators was heavy-set and wearing striped shirt, officers located defendant in vicinity of cars, defendant matched description and was disheveled and sweaty, and gun was found nearby).

## III.

Mr. Wade argues that evidence of the show-up identification should have been suppressed because the show-up was unduly suggestive. We agree with the trial court that the show-up was not "so impermissibly suggestive as to give rise to a very substantial likelihood of misidentification." *Maddox v. United States*, 745 A.2d 284, 292 (D.C. 2000) (internal quotation marks omitted).

Show-up identification procedures following the commission of a crime typically involve some suggestivity, and "something more egregious than mere custodial status is required to establish" impermissible suggestivity. *Singletary v. United States*, 383 A.2d 1064, 1068 (D.C. 1978). At the time of the show-up in this case, Mr. Wade was in handcuffs between two police cars. Such circumstances do not rise to the level of impermissible suggestivity. *See, e.g.*, *Howard v. United States*, 954 A.2d 415, 423 (D.C. 2008) (holding that show-up identification procedure was not unduly suggestive, where defendant was

handcuffed and placed under police spotlight); *Diggs v. United States*, 906 A.2d 290, 300 (D.C. 2006) (same where defendant was handcuffed and surrounded by "at least ten police officers and numerous police vehicles") (internal quotation marks omitted).

Relying on trial testimony, Mr. Wade argues that the show-up in this case was particularly suggestive because Officer Garcia knew the eyewitness, who worked as a maintenance man in the area where Officer Garcia used to live. We hold, however, that Officer Garcia's passing familiarity with the eyewitness did not render the identification procedure unduly suggestive. *Cf., e.g.*, *Singletary*, 383 A.2d at 1068-69 (holding that show-up identification procedure was not unduly suggestive, where officer said to eyewitness, "[w]e got two guys in the car similar to the ones you told us about") (internal quotation marks omitted).

## IV.

Mr. Wade challenges the sufficiency of the evidence to establish that he possessed the gun at issue. We hold that the evidence was sufficient.

An appellant challenging the sufficiency of the evidence must "bear[] the heavy burden of showing that the prosecution offered no evidence upon which a reasonable mind could find guilt beyond a reasonable doubt." *Dorsey v. United States*, 154 A.3d 106, 112 (D.C. 2017) (internal quotation marks omitted). We view the evidence in the light most favorable to the verdict. *Evans v. United States*, 122 A.3d 876, 887 (D.C. 2015). Although a verdict cannot rest on mere speculation, we make no distinction between direct and circumstantial evidence. *Id.* Ultimately, the evidence is sufficient if "after viewing it in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (internal quotation marks omitted). To support a conviction for unlawful possession of a firearm, the evidence must show among other things that Mr. Wade had a firearm in his possession or under his control. *Dorsey*, 154 A.3d at 112.

The United States presented sufficient evidence to show that Mr. Wade possessed the recovered gun. First, officers received an anonymous 911 call reporting that a man matching Mr. Wade's description had a gun in his waist. That call was admitted into evidence at trial as a present sense impression. Second, Mr. Wade fled from the police, which could reasonably be viewed as reflecting a consciousness of guilt. Third, Mr. Wade had his hand in his waistband area, which

corroborated the 911 caller's report. Fourth, although no one saw Mr. Wade throw the gun, Mr. Torres saw a gun being tossed from behind a dumpster at the same time that Mr. Wade was running behind the dumpster. Finally, Mr. Wade possessed bullets that matched the caliber of the recovered gun. We are satisfied that the evidence as a whole permitted the jury to find beyond a reasonable doubt that Mr. Wade had possessed the recovered gun. *Cf., e.g.*, *In re A.L.*, 839 A.2d 678, 678-80 (D.C. 2003) (holding that evidence was sufficient to support conviction for possession of marijuana, where officer saw appellant holding shiny bag, appellant made eye contact with officer, appellant detoured into stairwell for few seconds and then returned to street, and officer recovered plastic bag containing marijuana from drainpipe in stairwell).

In arguing that the evidence is insufficient, Mr. Wade points out that Mr. Torres saw two individuals run by. Mr. Torres's testimony, however, indicated that it was Mr. Wade who ran behind the dumpster and that the gun came into Mr. Torres's view from behind the dumpster at the same time Mr. Wade was running by. Given that testimony, and all of the other evidence in the case, a reasonable factfinder could find beyond a reasonable doubt that Mr. Wade possessed the gun at issue.

**V.**

Finally, Mr. Wade argues that the trial court erred in imposing a three-year mandatory minimum sentence on the count of unlawful possession of a firearm (UPF). We disagree.

Among other things, the UPF statute prohibits firearm possession by persons with a prior conviction punishable by imprisonment for more than one year. D.C. Code § 22-4503 (a)(1) (2012 Repl.). The UPF statute also provides for a three-year mandatory minimum sentence for any person who violates the statute and also has previously been convicted of a crime of violence other than conspiracy. D.C. Code § 22-4503 (b)(1). Mr. Wade had a prior conviction for attempted robbery, which is punishable by more than a year's imprisonment and which is defined as a crime of violence. D.C. Code §§ 22-2802, -4503 (d)(1) (2012 Repl.); D.C. Code § 23-1331 (4) (2012 Repl.). That conviction, however, was later set aside under the Youth Rehabilitation Act (YRA). D.C. Code § 24-906 (2012 Repl.). Mr. Wade does not dispute that his attempted-robbery conviction may be used in determining whether his possession of the gun was prohibited by § 22-4503 (a)(1). Rather, he argues that his attempted-robbery conviction cannot properly be used to trigger the three-year mandatory minimum sentence under § 22-4503 (b)(1). Mr.

Wade also argues that the jury was required to make the determination whether his attempted-robbery conviction qualifies as a crime of violence. Mr. Wade's jury-trial claim is foreclosed by our precedent. *Dorsey*, 154 A.3d at 122-26. His other sentencing claim, however, raises a statutory-interpretation issue of first impression.

"[S]tatutory interpretation is a holistic endeavor, and, at a minimum, must account for a statute's full text, . . . punctuation, structure, and subject matter." *Eaglin v. District of Columbia*, 123 A.3d 953, 956 (D.C. 2015) (brackets and internal quotation marks omitted). When interpreting statutes, we assume that the legislature "acted logically and rationally" and we "avoid interpretations of statutes which lead to implausible results." *Id.* at 957 (internal quotation marks omitted). This court may also look to legislative history to assist in interpreting a statute. *District of Columbia v. Place*, 892 A.2d 1108, 1111 (D.C. 2006).

The YRA explicitly authorizes the use of set-aside convictions in connection with the UPF statute. D.C. Code § 24-906 (f)(8) (convictions set aside under YRA may be used "[i]n determining whether a person has been in possession of a firearm in violation of" UPF statute). Mr. Wade argues, however, that although this provision permits the use of set-aside convictions to determine whether a

defendant violated the UPF statute, the provision does not authorize the use of set-aside convictions in determining what sentence to impose for violations of the statute. The provision, however, does not explicitly draw such a distinction. Moreover, two other provisions of the YRA convince us that set-aside convictions may be used to determine the appropriate sentence under the UPF statute.

First, the YRA authorizes judges to use set-aside convictions for the purpose of enhancing penalties at the sentencing stage. D.C. Code § 24-906 (f)(3) (set-aside conviction can be used "[i]n determining an appropriate sentence if the person is subsequently convicted of another crime"). Second, the YRA allows set-aside convictions to be used "[i]n determining whether a person has committed a second or subsequent offense for purposes of imposing an enhanced sentence under any provision of law." D.C. Code § 24-906 (f)(1). These provisions demonstrate that the YRA is properly understood to authorize the use of set-aside convictions in determining the appropriate sentence to be imposed in the event a defendant is subsequently found guilty of an additional crime.

Our conclusion finds further support from the legislative history of the YRA. Some of the provisions addressing the permissible uses of set-aside convictions were added in 2001. Sentencing Reform Amendment Act, 2000 D.C. Sess. Law

Serv. 13-302 (West) (codified as amended at D.C. Code § 24-906 (f)(1)-(6) (2012 Repl.)). The pertinent committee report explained that set-aside convictions can be used "to apply recidivist enhancements and otherwise in determining an appropriate sentence in any given case." D.C. Council, Report on Bill 13-696 at 26 (May 25, 2000). The particular provision addressing UPF was added in 2011. Criminal Code Amendment Act, 2010 D.C. Sess. Law Serv. 18-377 (West) (codified at D.C. Code § 24-906 (f)(7)-(8) (2012 Repl.)). The pertinent committee report reasoned that set-aside convictions already could be used to impose an enhanced sentence, and it followed that set-aside convictions also should be permitted to serve as a predicate for a charge of possession of a firearm by a convicted felon. D.C. Council, Report on Bill 18-963 at 8 (Dec. 1, 2010). The legislative history thus indicates that the set-aside provision of the YRA is meant to provide a one-time opportunity for youthful offenders to avoid the stigma of conviction, not to provide a basis for reducing the otherwise applicable sentence if a youthful offender is later convicted of additional offenses.

In sum, the trial court correctly determined that Mr. Wade was subject to a three-year mandatory minimum for his UPF conviction.

For the foregoing reasons, the judgment of the trial court is

*Affirmed.*