Larry David HOLDREN, Petitioner–
Appellant,

v.

Carl LEGURSKY, Warden, West Virginia
Penitentiary, Respondent–Appellee.

No. 92–6258.

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 29, 1992.

Decided Feb. 7, 1994.

**ARGUED:** Larry Harless, Evans, West Virginia, for Appellant. Michael John Basile, Assistant Attorney General, Charleston, West Virginia, for Appellee. **ON BRIEF:** Mario J. Palumbo, Attorney General, Teresa A. Tarr, Senior Assistant Attorney General, Charleston, West Virginia, for Appellee.

Before WIDENER and LUTTIG, Circuit Judges, and DOUMAR, United States District Judge for the Eastern District of Virginia, sitting by designation.

## OPINION

WIDENER, Circuit Judge:

Larry David Holdren appeals the district court's denial of his habeas petition. We address his claims in turn, and we affirm.

On December 28, 1982, Mrs. Cheryl Martin–Schroeder was jogging after work along the Kanawha riverfront in Charleston, West Virginia. Shortly after Mrs. Martin–Schroeder began jogging, Holdren approached her and pushed her down a hill towards the river.

A struggle ensued as Holdren dragged Mrs. Martin–Schroeder down the hill and towards a concrete tunnel facing the river, all the while threatening to kill her. Once in the tunnel Holdren had Mrs. Martin–Schroeder sit down, and he removed her clothing. Holdren then removed his clothing, except for his shirt, and proceeded to perform several sexual acts with her. After the ordeal, Holdren put on his clothes, combed his hair, and left.

Holdren was charged under a single indictment with six counts of first degree sexual assault and convicted on July 31, 1984. Following exhaustion of state remedies, the present petition was filed February 25, 1991, in the United States District Court for the Southern District of West Virginia. Pursuant to 28 U.S.C. § 636(b)(1)(B), the district court referred the petition to a United States Magistrate Judge with directions to submit proposed findings of fact and to recommend an appropriate disposition of the petition. The Magistrate Judge recommended that the writ be denied and that the action be dismissed and stricken from the docket. In a judgment order issued February 24, 1992, the district court adopted in full the recommendations of the Magistrate Judge. This appeal followed.

### Destruction of Evidence

■ Holdren claims that three separate instances of destruction of evidence violated his due process rights. The first is the discarding or ruination of collected semen samples by agents employed by the prosecution. The second and third involve the failure of the police to preserve physical evidence by measuring and making plaster casts of footprints and by fingerprinting a beer bottle and comb.

After the assault, Mrs. Martin–Schroeder was taken to the Charleston Area Medical Center by a detective of the Police Department of the City of Charleston. While at the Medical Center a physician examined her and collected body substances for both medical and forensic evaluation. After preparing slides from the collected substances and viewing them for the presence of spermato-

zoa, the physician sent the slides to the Medical Center and discarded the unused fluids.

Holdren was notified of the existence of the laboratory slides in March 1984. Both prior to trial and during a pending habeas petition in 1990, Holdren was allowed to have the semen specimens scientifically tested to determine if he could be excluded as the possible defendant. In both instances, the tests revealed nothing because the staining process used by the original examining physicians had rendered the specimens unsuitable for testing. Holdren claims that because the examining physicians were agents of the prosecuting attorney and because their actions rendered the semen samples untestable for blood typing and DNA analysis, the physicians deliberately destroyed evidence in violation of his due process rights.

■ Under *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963), and *United States v. Agurs,* 427 U.S. 97, 110–11, 96 S.Ct. 2392, 2400–01, 49 L.Ed.2d 342 (1976), the government has a duty to disclose material exculpatory evidence to the defendant, and the good faith or bad faith of the government in failing to do so is irrelevant. However, when the issue is preservation of potentially exculpatory evidence, the defendant must show bad faith on the part of the government to prevail on a violation of due process claim. See *Arizona v. Youngblood,* 488 U.S. 51, 57–58, 109 S.Ct. 333, 337, 102 L.Ed.2d 281 (1988) (holding that failure to preserve potentially useful evidence does not constitute denial of due process of law unless criminal defendant can show bad faith on part of police). As for bad faith, the Court stated that "the presence or absence of bad faith by the police for purposes of the Due Process Clause must necessarily turn on the police's knowledge of the *exculpatory value* of the evidence *at the time it was lost or destroyed."* 488 U.S. at 56–57, 109 S.Ct. at 336–37 n. * (emphasis added).

■ Without deciding whether the physicians were agents of the prosecution, we are of opinion that even if they were agents, they did not act in bad faith by failing to preserve the semen samples in such a state that they later could be subjected to further scientific analysis. First, the physicians followed standard procedures in collecting, analyzing, and disposing of the semen. Second, at the time that the physicians disposed of the remaining semen, they did not know of any exculpatory value of the semen because the semen had not been tested for a blood grouping analysis. That test, indeed, was not one performed at the Medical Center.[1]

■ Holdren also claims that the failure of the police to measure or preserve the footprints at the scene or to fingerprint the comb and beer bottle found at the scene violated his due process rights. This claim, however, asserts nothing more than negligence on the part of the police investigators and does not indicate any bad faith on their part in failing to preserve the evidence. Furthermore, Holdren did not request an instruction regarding destruction of the evidence and has presented no authority requiring the district court to give such an instruction.

### Results of DNA Testing

■ Pursuant to a state habeas court order filed April 17, 1990, Holdren was allowed to have DNA testing performed on two un-

---

1. Holdren's status as a non-secretor was brought out at trial, and his expert witnesses testified that blood typing cannot be performed on the body fluids of a non-secretor. While this might be said to be evidence against Holdren in that an analysis of his semen would produce no blood typing, the argument goes that if the seminal fluid was tested and did reveal a blood type, this necessarily would exclude a non-secretor as a source of the sperm. Just such a situation as contemplated by this argument, however, was discussed in *Youngblood,* where the court stated, "If the [Arizona] court meant by this statement that the due process clause is violated when the police fail to use a particular investigatory tool, we strongly disagree. The situation here is no different than a prosecution for drunken driving that rests on police observation alone; the defendant is free to argue to the finder of fact that a breathalyzer test might be exculpatory but the police do not have a Constitutional duty to perform any particular test." 488 U.S. at 58–59, 109 S.Ct. at 337–38.

All of the facts concerning the tests made at the Medical Center, as well as the comments of Holdren's expert witnesses, were before the jury. While any deficiency in performance on the part of the doctors at the Medical Center undoubtedly went to the weight of the evidence, nothing in the record indicates a constitutional deficiency.

identified pubic hairs removed from Mrs. Martin–Schroeder during her original examination. These two hairs, Hair A and Hair B, were tested by a forensic lab and the results were as follows: "[Hair A] is most consistent with the victim but is also consistent with the defendant. [Hair B] is very similar to the victim and could be hers." The lab then ran a more extensive DNA test on Hair B because it, unlike Hair A, had a portion of the hair root remaining. From this test the lab listed Mrs. Martin–Schroeder as a potential source of the hair and eliminated Holdren as a source of the hair. At trial, however, a forensic biologist, based on a visual analysis of the hairs, had excluded Holdren as the source of Hair A but not as the source of Hair B. Because the DNA testing revealed that Holdren was not the source of Hair B and the forensic biologist testified at trial that Holdren could have been the source of Hair B, Holdren claims that the testimony at trial was prejudicial.[2]

Although the DNA testing produced results that were opposite to the trial testimony regarding the hairs, we are of opinion that the discrepancy was not prejudicial and was at most harmless error. Without making specific reference to the labeling of each hair, the net effect of the trial testimony and the DNA testing was to exclude Holdren as the source of one hair, include him as the possible source of the other hair, and include Mrs. Martin–Schroeder as the possible source of both hairs. Viewing the impact of the tests together, the trial testimony was neither more inculpatory nor less exculpatory than the DNA testing, and thus the trial testimony in no way prejudiced Holdren. Rather than consider the net effect of the tests, Holdren instead urges us to exclude Holdren as the source of both hairs, which none of the evidence did. Even if we were to adopt such an approach, however, the result still does not exculpate Holdren because both of the hairs could have been Mrs. Martin–Schroeder's. Only if both Holdren and Mrs. Martin–Schroeder were excluded as the source of both hairs would this evidence be necessarily exculpatory.

### Suggestive Photo Array of Defendant

■ Holdren next asserts that his conviction should be overturned because the trial court failed to sanitize to his satisfaction the five photographs used in his out-of-court identification.[3] Relying on our decision in *United States v. Harman,* 349 F.2d 316 (4th Cir.1965), and similar decisions, Holdren asserts that the introduction into evidence of his mug shots constituted serious prejudice and deprived him of a fair trial. 349 F.2d at 320. Under the facts of this case, Holdren's reliance on *Harman* is misplaced. In *Harman* we held that the introduction of mug shots constituted reversible error because the prosecution, over the vigorous objection of defense counsel both before and during trial, deliberately introduced the photographs even though the defendant had neither testified nor put his character in issue. 349 F.2d at 320–21. In marked contrast to the facts in *Harman,* Holdren's own counsel introduced the photographs into evidence, and Holdren, unlike the defendant in *Harman,* testified on his own behalf. Any error along this line was probably invited, but even if not, based on our decision in *Harman,* we are of opinion that Holdren's claim has no merit.

### Suggestive and Unreliable Pre–Trial Identification

■ In challenging an identification procedure, Holdren must prove that the identification procedure was impermissibly suggestive. See *Manson v. Brathwaite,* 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977). Once this threshold is crossed, the court then must determine whether the identification was nevertheless reliable under the totality of the circumstances. See 432 U.S. at 114, 97 S.Ct. at 2253. However, without determining whether Holdren has met the threshold requirement of suggestiveness, we may proceed directly to the reliability of the identification. See *United States v. Dorta,*

---

**2.** The fact that the evidence of the forensic biologist was introduced by Holdren as his witness does not add to the weight of his argument.

**3.** The police identification was removed from the photos. The profile and full face views were not cut apart.

783 F.2d 1179, 1183 (4th Cir.), *cert. denied*, 477 U.S. 905, 106 S.Ct. 3274, 91 L.Ed.2d 564 (1986). In this instance we are of opinion that the identification was reliable and thus its alleged suggestiveness is of no import. Mrs. Martin–Schroeder testified that she purposely looked at Holdren several times during the encounter so that she could later positively identify him. This was no momentary episode; she was with him continuously for some 30 minutes while he took his liberties with her. She had seen him as he pushed her down the bank and as he left the tunnel. Later she positively identified him both from a photographic array and at trial. Holdren claims that during the encounter Mrs. Martin–Schroeder lost her eyeglasses, without which she could not drive, and that the tunnel where the assault took place was too dark for her to see him. Mrs. Martin–Schroeder's testimony sufficiently addresses these points because she testified that she needs her glasses only to focus on objects that are at a great distance, not up close, and. that she purposely looked at Holdren several times both inside and outside the tunnel. We are of opinion and hold that her identification of Holdren was reliable.

### Presentation of Irrelevant and Emotionally Inflammatory Testimony by Prosecuting Attorney

Holdren asserts that the prosecution committed misconduct by eliciting irrelevant and inflammatory testimony, with respect to the requirements of her job, from Mrs. Martin–Schroeder, and by making certain statements with respect to Mrs. Martin–Schroeder's credibility during closing argument. Under our test as set out in *United States v. Brockington*, 849 F.2d 872 (4th Cir.1988), prosecutorial misconduct arises when the prosecutor's remarks were in fact improper and they "prejudicially affected the defendant's substantial rights so as to deprive the defendant of a fair trial." 849 F.2d at 875. In this instance, neither the testimony elicited nor the statements made by the prosecutor were improper, and thus no prejudice accrued to Holdren. We note in passing that there was not even an objection to the testimony, and no motion for mistrial was made.

### Constitutionality of Six Count Indictment

Holdren next challenges his indictment and the trial court's refusal to dismiss at least three of the six counts. Holdren asserts that the six count indictment put him in jeopardy more than once for the same offense, failed to state each alleged offense with sufficient particularity, and violated his right to a trial by jury free from prejudice. We find no merit to these arguments.

The indictment charged Holdren with three counts of contact of the male sex organ with the mouth, two counts of contact of the male sex organ with the female sex organ and one count of contact of the male sex organ with the anus, all in violation of W.Va.Code § 61–8B–3 as amended. The indictment tracks the statutory language verbatim, and under our holding in *United States v. American Waste Fibers Co.*, 809 F.2d 1044, 1046–47 (4th Cir.1987), an indictment that tracks statutory language is valid. Not only that, the indictment notes the specific sex act charged in each count. Furthermore, in *State v. Carter*, 168 W.Va. 90, 282 S.E.2d 277, 280–81 (1981), the West Virginia Supreme Court of Appeals held that each separate act in violation of the first-degree sexual assault statute constitutes a separate and distinct offense (anal and oral penetration). We are essentially bound to follow the highest state court's interpretation of legislative intent as to the availability of multiple punishments. See *Sanderson v. Rice*, 777 F.2d 902, 904 (4th Cir.1985), *cert. denied*, 475 U.S. 1027, 106 S.Ct. 1226, 89 L.Ed.2d 336 (1986). Therefore, we are of opinion that the indictment in question sufficiently charged Holdren and did not violate the principles of double jeopardy. Because we find no error in the challenged indictment, we do not address Holdren's claim that the indictment prejudiced the jury in any way. Furthermore, we are of opinion that the jury verdict form was not defective and properly allowed the jury to find Holdren innocent on all counts, guilty on all counts, or guilty on any combination of the six counts.

### Sufficiency of the Evidence

In *Sneed v. Smith*, 670 F.2d 1348 (4th Cir.1982), we established a test for re-

viewing sufficiency of the evidence claims in federal habeas corpus review of state convictions. The sole question is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 670 F.2d at 1352 (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)). Under this test, we are of opinion that the evidence overwhelmingly is sufficient to support the jury's verdict. Mrs. Martin–Schroeder testified that she purposely looked at the defendant more than once and for an extended period of time so that she later could positively identify him. Later she positively identified Holdren both from police photographs and at trial, and her identification was corroborated by Agent Harp who saw Holdren in the vicinity shortly after the assault. And there is no doubt that Mrs. Martin–Schroeder was sexually assaulted six times in the manner charged.

### Constitutionality of the Alibi Instruction

■ In *Frye v. Procunier,* 746 F.2d 1011 (4th Cir.1984), *cert. denied,* 472 U.S. 1010, 105 S.Ct. 2707, 86 L.Ed.2d 723 (1985), we held that an alibi instruction is improper if it places the burden on the defendant to prove his alibi defense so that it creates a reasonable doubt in the mind of the jury. 746 F.2d at 1013–14. A review of the instruction in question[4] reveals that it properly defined the defense of alibi and instructed the jury that they could not convict Holdren if any member had a reasonable doubt of his presence at the commission of the alleged crime. We are of opinion that such an instruction is proper.

### Ineffective Assistance of Counsel

■ Throughout his petition, Holdren raises several ineffective assistance of counsel claims. Specifically, Holdren claims that the following constitute ineffective assistance of counsel: 1) failure to request a *Young-*

blood curative instruction regarding destruction of evidence, 2) failure to have an independent qualified expert perform a comparative hair analysis on the two pubic hairs, 3) defense counsel's proposal of the alibi instruction that the trial court subsequently gave to the jury.

■ Under the ineffective assistance of counsel standard established in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), Holdren must show that his counsel's performance was both deficient and prejudicial, in that the deficiencies were "so serious as to deprive [Holdren] of a fair trial." 466 U.S. at 687, 104 S.Ct. at 2064. Our review of counsel's performance is highly deferential, 466 U.S. at 689, 104 S.Ct. at 2065, and our goal is not to grade counsel's performance. 466 U.S. at 697, 104 S.Ct. at 2069. Rather, our goal is to determine if counsel's performance fell below an objective standard of reasonableness after giving proper weight to whether counsel's decisions reflected a sound trial strategy. 466 U.S. at 688–89, 104 S.Ct. at 2064–65.

■ After reviewing the trial record closely, we are of opinion that Holdren received effective assistance of counsel. Although Holdren's counsel did not request a destruction of the evidence instruction, we cannot say, based on the overall record, that a destruction of the evidence instruction would have produced a different outcome nor can we say that counsel's failure to request one constituted deficient representation or prejudiced Holdren in any way. Similarly, defense counsel's failure to have an independent qualified expert perform a comparative hair analysis on the two pubic hairs did not constitute deficient representation or deprive Holdren of a fair trial. An expert in the field of forensic biology performed the tests on the two hairs, and the results did not prejudice Holdren because he was excluded as the source of one hair and Mrs. Martin–Schroe-

---

4. The alibi instruction states in full:

The defendant, Larry Holdren, has offered evidence for the purpose of showing that he was not present at the place where, and at the time when, the offense charged in the indictment was committed. Such defense is in law called an alibi. If after impartially considering, weighing and comparing all of the evidence, the jury or any member of the jury has a reasonable doubt of the presence of the defendant, Larry Holdren, at the place where and at the time when, the alleged offense was committed, you can not find the defendant, Larry Holdren, guilty.

der was determined as a possible source for the other hair. Furthermore, the independent DNA tests performed later did not produce results that were in any way more beneficial to Holdren's position. Finally, defense counsel's proffering of the alibi instruction was not improper because, as we have noted above, the instruction was adequate.

We have considered any other assignments of error which may appear in Holdren's brief and are of opinion they are without merit.

Accordingly, the judgment of the district court is

*AFFIRMED.*