**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 12-4319**

_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JOHN FRANKLIN,

Defendant - Appellant.

_____

Appeal from the United States District Court for the District of
Maryland, at Baltimore.    Marvin J. Garbis, Senior District
Judge.  (1:11-cr-00095-MJG-1)

_____

Argued:  September 20, 2013          Decided:  November 6, 2013

_____

Before DAVIS, KEENAN, and FLOYD, Circuit Judges.

_____

Affirmed by unpublished opinion.   Judge Keenan wrote the
opinion, in which Judge Davis and Judge Floyd joined.  Judge
Davis wrote a separate concurring opinion.

_____

**ARGUED:** Jenifer Wicks, LAW OFFICE OF JENIFER WICKS, Washington,
D.C., for Appellant.  John Walter Sippel, Jr., OFFICE OF THE
UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.  **ON
BRIEF:** Rod J. Rosenstein, United States Attorney, OFFICE OF THE
UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

BARBARA MILANO KEENAN, Circuit Judge:

John Franklin was convicted by a jury of numerous charges arising from his participation in two carjacking incidents. In this appeal, Franklin argues that: (1) the district court erred in denying his motion to suppress certain evidence obtained around the time of his arrest; (2) the evidence was insufficient to support his convictions; and (3) his trial counsel provided ineffective assistance. Upon our review, we affirm the district court's judgment.

I.

On August 14, 2010, Franklin met co-defendants Troy Williams and Dwayne Frazier at their residence in Baltimore, Maryland. Franklin suggested that the three men go "downtown" to rob people. Williams and Frazier agreed and, when the group left the residence, Frazier was in possession of a handgun.

While walking toward downtown Baltimore, the group encountered Sean Gallion-Thomas, who was driving a green Buick LeSabre (the LeSabre). Franklin informed Gallion-Thomas that the group needed a ride and offered to pay Gallion-Thomas, who was not a licensed cab driver, to take them to their destination.

Gallion-Thomas drove the group for about 30 minutes, until he was instructed by Franklin to stop the car. Frazier, who was

2

seated behind the driver's seat, pointed a gun at Gallion-Thomas, and Franklin asked whether Gallion-Thomas had any money or a cell phone. Williams later removed money and a phone from Gallion-Thomas' pockets.

Meanwhile, Franklin took Gallion-Thomas' identification card from his pocket, and read Gallion-Thomas' name and address aloud, stating, "We know where you live at." Franklin instructed Gallion-Thomas not to call the police, and told him that the group would return the car to Gallion-Thomas' home if the incident was not reported. Gallion-Thomas perceived Franklin's statements as a threat. The group "kicked [Gallion-Thomas] out" of the car and drove away. Thereafter, Gallion-Thomas reported the crime to the Baltimore City police (the police).

While riding in the LeSabre, Franklin, Williams, and Frazier formulated a plan to go to the El Dorado strip club to commit another robbery. A short while later, the group pulled into a parking lot adjacent to the club and encountered a red Dodge Charger (the Charger), which had three female occupants. Franklin and Williams got out of the LeSabre and walked toward the Charger.

Williams approached the women in the Charger while holding a gun, touched the gun to the driver's chest, and stated "give me everything." Franklin "groped" the front-seat passenger

3

searching for items in her pockets. Williams and Franklin took two cell phones and a purse from the women, and Williams demanded the keys to the Charger upon being prompted to do so by Franklin.

Because the driver of the Charger thought that Williams would shoot her if she did not comply, she gave him the keys to her vehicle. After the women got out of the car, Franklin and Williams left the scene in the vehicle, following the LeSabre driven by Frazier.

The women contacted the police to report the incident, and provided a detailed description of the two men who took the vehicle, including their height, build, and attire. The women informed the police that they "really got a good look" at Franklin, whom they reported as being a "heavy-set" man wearing a colorful striped shirt.

Police officers soon observed a red Dodge Charger being "trailed" by a green Buick LeSabre. The officers followed the vehicles, and were able to stop the LeSabre and arrest its driver, Frazier. Gallion-Thomas later identified Frazier as one of the perpetrators of the first robbery and carjacking.

The driver of the Charger initially eluded police and began driving at a high rate of speed. The police temporarily lost sight of the vehicle, but eventually found it after the vehicle struck a parked car. However, when a police officer approached

4

the Charger, he observed that its occupants had fled. After additional officers arrived, Williams was found hiding under a parked vehicle which was about "two or three vehicles" away from the Charger.

Shortly thereafter, a few blocks away from the Charger, a police officer saw a man later identified as Franklin, who was heavy-set, wearing a striped shirt and sweating profusely. The officer stopped Franklin because he "matched the description that was given over the [police] radio." While conducting a "pat down" search of Franklin, the officer recovered Gallion-Thomas' identification card and a cell phone belonging to one of the female victims.

In the same block in which Franklin was apprehended, the police found a loaded revolver, which later was identified by two of the women victims as being the firearm used during the second incident. The police also found near that location a wallet and an additional cell phone owned by another of the female victims. Less than 10 minutes later, and about 45 minutes after the second carjacking occurred, the female victims were brought by police to the street location where Franklin was being detained. All three women identified Franklin as one of the perpetrators.

A grand jury issued a superseding indictment charging Franklin with: conspiracy to commit carjacking, in violation of

5

18 U.S.C. § 371 (Count 1); carjacking, in violation of 18 U.S.C. § 2119 (Counts 2 and 4); possession of a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c) (Counts 3 and 5); and possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g) (Count 6). Before trial, the district court denied Franklin's motion to exclude evidence relating to the identifications made by the female victims, and also denied Franklin's motion to suppress the items obtained from his person during the search incident to his arrest.

The jury convicted Franklin of all charges, and the district court imposed a total sentence of 414 months' imprisonment. Franklin timely appealed.

## II.

Franklin first argues that the district court erred in refusing to suppress the evidence seized during the search incident to his arrest. According to Franklin, the police lacked probable cause to arrest him, thereby invalidating the seizure of the cell phone belonging to one of the female victims and Gallion-Thomas' identification card. Franklin also contends that the impermissibly suggestive nature of the "show-up" identifications rendered them inadmissible. We disagree with Franklin's arguments.

6

In considering a district court's denial of a motion to suppress evidence, we review de novo the court's legal conclusions, and review for clear error the court's supporting factual findings. United States v. Kelly, 592 F.3d 586, 589 (4th Cir. 2010). In undertaking this analysis, we review the evidence in the light most favorable to the government, the prevailing party at trial. Id.

We conclude that the police had probable cause to arrest Franklin even before the female victims identified him. A police officer may make a warrantless arrest in a public place if the officer has probable cause to believe that the individual is or will soon be involved in criminal activity. United States v. Dickey-Bey, 393 F.3d 449, 453 (4th Cir. 2004). The requirement of probable cause may be satisfied by "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." See id. (quoting Michigan v. DeFillippo, 443 U.S. 31, 37 (1979)). We consider under the "totality of the circumstances" the question whether an arrest was supported by probable cause, affording "defer[ence] to the expertise and experience of law enforcement officers at the scene." Id.

Here, the evidence showed that in responding to reports that a green Buick LeSabre and a red Dodge Charger had been stolen at gunpoint, police observed the two vehicles, and were able to stop the LeSabre and apprehend its driver. Although the driver of the Charger initially eluded police, that vehicle later collided with a parked car and one occupant of the Charger was found hiding under another parked car near the collision scene.

After searching the area for the Charger's additional occupant, and having received reports that one of the perpetrators was heavy-set and was wearing a striped shirt, the police observed nearby a man matching this physical description wearing a striped shirt, who was sweating profusely and appeared disheveled. According to the police officer who apprehended Franklin, he "matched the description that was given over the [police] radio." The officers also found a handgun discarded on the same street block where Franklin was detained. Based on this evidence, we hold that the district court did not err in concluding that the police had probable cause to arrest Franklin, and that the items recovered in the search incident to his arrest were admissible.

Franklin argues, nevertheless, that the identification testimony from the female victims should have been suppressed because the identifications were impermissibly suggestive. We

8

disagree, based on our ultimate conclusion that this identification evidence was reliable.

The exclusion of identification evidence is a "drastic sanction . . . that is limited to identification testimony which is manifestly suspect." Harker v. Maryland, 800 F.2d 437, 443 (4th Cir. 1986). In considering whether an identification should be suppressed, we undertake a two-step analysis. First, we determine whether the defendant has shown that the identification procedure was impermissibly suggestive. See Holdren v. Legursky, 16 F.3d 57, 61 (4th Cir. 1994) (citing Manson v. Brathwaite, 432 U.S. 98, 114 (1977)). If the defendant has met this burden, we next must decide "whether the identification was nevertheless reliable under the totality of the circumstances." See id.

In the present case, there was a significant degree of suggestiveness involved in the show-up identification process. The police told the female victims that the suspects had been apprehended, and Franklin was in handcuffs sitting on a curb near some police cars when the victims arrived and identified him. Accordingly, we will assume, without deciding, that Franklin has met his burden of showing that the show-up identification process in this case was impermissibly suggestive. See Holdren, 16 F.3d at 61 ("[W]ithout determining whether [the defendant] has met the threshold requirement of

9

suggestiveness, we may proceed directly to the reliability of the identification.").

We nevertheless conclude that the identification evidence was admissible, because it was "reliable under the totality of the circumstances." See id. at 61. In evaluating reliability under the totality of the circumstances, we primarily consider five factors: (1) the witness's opportunity to view the accused at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the accused; (4) the level of certainty by the witness at the confrontation; and (5) the length of time between the crime and confrontation. Neil v. Biggers, 409 U.S. 188, 199-200 (1972); Satcher v. Pruett, 126 F.3d 561, 566 (4th Cir. 1997).

Here, upon application of the factors identified in Biggers we conclude that Franklin's identification by the female victims was reliable. The female victims were in very close proximity to Franklin during the carjacking, and one of the victims testified that the group "really got a good look" at Franklin. Additionally, the identifications were made soon after the crimes occurred, the victims were very confident that Franklin was one of their assailants,[1] and the victims had provided a

---

[1] The driver of the Charger testified that she "was a hundred percent certain" at the time of the identification that Franklin was one of the men who had stolen her vehicle.

10

prior description of Franklin to the police that matched his appearance when he was apprehended. Accordingly, we conclude that the district court did not err in denying Franklin's motion to suppress the identification evidence. See United States v. Saunders, 501 F.3d 384, 391-92 (4th Cir. 2007) (impermissibly suggestive out-of-court photo identification did not violate defendant's rights when the identification was nonetheless reliable under the totality of the circumstances); Abrams v. Barnett, 121 F.3d 1036, 1041-42 (7th Cir. 1997) (unduly suggestive show-up identification procedure was not a denial of due process rights because the totality of the circumstances established that the identification was nevertheless reliable).

## III.

Franklin next argues that the government failed to prove at least one element of each of the offenses. He maintains that these alleged failures require that a judgment of acquittal be entered on all charges.

We review de novo a district court's denial of a defendant's motion for judgment of acquittal. United States v. Alerre, 430 F.3d 681, 693 (4th Cir. 2005). A defendant challenging the sufficiency of the evidence faces "a heavy burden." United States v. Beidler, 110 F.3d 1064, 1067 (4th Cir. 1997) (citation and internal quotation marks omitted). We

11

must sustain a jury verdict if there is substantial evidence to support it, viewing the evidence in the light most favorable to the government, assuming the credibility of the evidence, and drawing all favorable inferences from the evidence. United States v. Penniegraft, 641 F.3d 566, 571-72 (4th Cir. 2011). The evidence supporting a conviction is "substantial" if "a reasonable finder of fact could accept [the evidence] as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." Alerre, 430 F.3d at 693 (citation and internal quotation marks omitted).

Franklin first challenges his convictions for carjacking (Counts 2 and 4) and conspiracy to commit carjacking (Count 1). The elements necessary to support a conviction for conspiracy under 18 U.S.C. § 371 include (1) an agreement to commit an offense; (2) willing participation by the defendant; and (3) an overt act in furtherance of the conspiracy. United States v. Tucker, 376 F.3d 236, 238 (4th Cir. 2004). The government may use circumstantial evidence to establish a defendant's knowledge and participation in the conspiracy. United States v. Burgos, 94 F.3d 849, 857-58 (4th Cir. 1996) (en banc).

With regard to the offense of carjacking in violation of 18 U.S.C. § 2119, the government was required to establish that the defendant "(1) with intent to cause death or serious bodily harm (2) took a motor vehicle (3) that had been transported, shipped

12

or received in interstate or foreign commerce (4) from the person or presence of another (5) by force and violence or intimidation." United States v. Foster, 507 F.3d 233, 246-47 (4th Cir. 2007) (citation and internal quotation marks omitted). To prove the intent element of the carjacking offense, the government was required to show that when the defendant or his co-conspirators demanded or took control of the vehicle, the defendant or his co-conspirators had the intent to seriously harm or to kill the driver if necessary to steal the car. Holloway v. United States, 526 U.S. 1, 12 (1999); see United States v. Chorman, 910 F.2d 102, 111-12 (4th Cir. 1990) (noting that under Pinkerton v. United States, 328 U.S. 640 (1946), a conspirator may be convicted of substantive offenses committed by co-conspirators in the course of and in furtherance of the conspiracy); Foster, 507 F.3d at 247. Although an "empty threat" or an "intimidating bluff" is insufficient standing alone to establish the requisite intent, the government need only show that the defendant or his co-conspirators were "conditionally prepared to act if the person failed to relinquish the vehicle." See Holloway, 526 U.S. at 11; Foster, 507 F.3d at 247.

In the present case, Franklin asserts that the carjacking and conspiracy convictions cannot stand because the government failed to establish the intent element of the carjacking

13

offense, and also failed to show that the object of the conspiracy was to commit the specific crime of carjacking. After reviewing the record, we conclude that the evidence was sufficient to support a jury determination that Franklin had the required intent with regard to those charges.

The evidence overwhelmingly established that Franklin knowingly and actively participated with Frazier and Williams in planning and conducting the theft of the two vehicles, which was accomplished by pointing a gun at each of the two drivers and demanding that they relinquish their automobiles. Notably, the perpetrators did not merely display a gun during these incidents but rather pointed the gun at the driver of each vehicle in demanding car keys and other possessions. During the first incident, Franklin "[did] the talking," while Frazier aimed a gun at the driver. Franklin also forcibly removed Gallion-Thomas' driver's license from his person, and read aloud his name and address in a manner that Gallion-Thomas perceived as a threat. During the second incident, Franklin "groped" one of the vehicle's passengers, searching for items to steal, while Williams pressed a loaded handgun against the driver's chest. Franklin thereafter entered the Charger with Williams and left the scene in the automobile. We conclude that this evidence was sufficient to support a jury determination that the object of the conspiracy was to commit the offense of carjacking, and that

14

the conspirators intended to inflict serious harm or to kill the drivers if necessary to steal the cars. See United States v. Augustin, 376 F.3d 135, 140 (3d Cir. 2004) (holding that defendant could be convicted of carjacking offenses even though he purportedly did not know a co-conspirator intended to commit a carjacking or possessed a gun, because the defendant "ratified" the co-conspirator's actions by failing to stop him and instead entered the car with the co-conspirator and drove away); United States v. Adams, 265 F.3d 420, 425 (6th Cir. 2001) (physically touching a carjacking victim with a weapon is sufficient, standing alone, to establish intent to kill or inflict serious harm on the victim).

Franklin next challenges his convictions under Counts 3 and 5 for possession of a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c). Franklin's sole argument is that these convictions cannot stand if we conclude that the evidence is insufficient to support his carjacking and conspiracy convictions. Because we hold that the carjacking and conspiracy convictions are supported by ample evidence, we conclude that Franklin's challenges to the convictions under Counts 3 and 5 likewise fail.[2]

---

[2] Moreover, we note that to obtain a conviction under 18 U.S.C. § 924(c), the government must establish that (1) the defendant possessed a firearm, and (2) such possession was in
(Continued)

Franklin also challenges his conviction under Count 6 for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), arguing that the government failed to show that he had actual or constructive possession of a gun at any time during the carjacking incidents. We disagree.

To establish a conviction under Section 922(g)(1), the government was required to prove three elements, namely, that (1) the defendant was a convicted felon, (2) who voluntarily and intentionally possessed a firearm, and (3) the firearm had traveled in interstate commerce. United States v. Gallimore, 247 F.3d 134, 136 (4th Cir. 2001). Only the second element is at issue in this appeal. Proof of actual or exclusive possession was not required, because a conviction may be obtained on the basis of constructive or joint possession. Id. at 136-37.

---

furtherance of a crime of violence. United States v. Lomax, 293 F.3d 701, 704 (4th Cir. 2002). A defendant may be convicted for violating Section 924(c) on the basis of a co-conspirator's use of a gun if the use was in furtherance of the conspiracy and was reasonably foreseeable to the defendant. United States v. Wilson, 135 F.3d 291, 305 (4th Cir. 1998). Here, the evidence showed that during both carjacking incidents, one of Franklin's co-conspirators possessed a firearm and pointed it at the driver in Franklin's presence, thereby allowing the co-conspirators to steal the victims' cars and possessions. Accordingly, we conclude that the evidence supports Franklin's convictions for violating 18 U.S.C. § 924(c).

After reviewing the record, we conclude that a jury reasonably could have inferred that Franklin possessed a gun after he abandoned the Charger. The evidence showed that Williams, who pointed a gun at the driver of the Charger during the second incident, entered that vehicle along with Franklin, and that they both drove away in the Charger while Frazier remained in the LeSabre. According to Williams' testimony, he did not take the gun from the Charger when leaving the vehicle after the collision. Although Williams did not see whether Franklin took the gun from the Charger upon fleeing the vehicle, the gun was found by a police officer in a stairwell located on the same street where Franklin was apprehended. On the basis of this evidence, the jury reasonably could have inferred that Franklin took the gun from the Charger when he fled the vehicle, and discarded the gun while attempting to avoid the police. Accordingly, we conclude that Franklin's conviction for violating Section 922(g)(1), as well as his other convictions, are supported by substantial evidence.

IV.

Finally, we address Franklin's argument that his trial counsel provided ineffective assistance by failing to inform him of the potential prison sentence that could be imposed if he were convicted of all charges. Franklin asserts that counsel's

17

failure to provide this information affected Franklin's decision to decline the government's plea offers.

We repeatedly have stated that claims of ineffective assistance of counsel are cognizable on direct appeal only when the record conclusively demonstrates that defense counsel did not provide effective representation. United States v. Powell, 680 F.3d 350, 359 (4th Cir. 2012); United States v. Allen, 491 F.3d 178, 191–92 (4th Cir. 2007). Here, the record does not conclusively establish that the performance of Franklin's counsel was deficient or prejudicial. See Strickland v. Washington, 466 U.S. 668, 687 (1984). Therefore, we decline to address Franklin's ineffective assistance of counsel claim in this direct appeal.

V.

For these reasons, we affirm the district court's judgment.

AFFIRMED

18

DAVIS, Circuit Judge, concurring:

I concur fully in Judge Keenan's carefully-reasoned opinion for the panel affirming the judgment. I pause only to note the continuing discomfort in the lower federal courts and in many state courts over the Supreme Court's outdated due process test for the reliability of eyewitness identification evidence. See ante, at 10 (applying Neil v. Biggers, 409 U.S. 188, 199-200 (1972)). See generally United States v. Greene, 704 F.3d 298, 305 n.3, 309 n.4 (4th Cir. 2013)(collecting authorities). As the majority opinion shows, given the circumstances in the case at bar, one could hardly reasonably question the salience of witness "certainty" to the reliability analysis. To be sure, however, such will not always be the case. Id.